IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION


**WEST VIRGINIA MEDICAL INSTITUTE, INC.,**

     **Plaintiff,**


**v.**                                          **CIVIL ACTION NO. 2:15-cv-13449**


**INNOVATIVE RESOURCE GROUP, LLC
d/b/a APS HEALTHCARE MIDWEST, a
Wisconsin Limited Liability Company,
KEPRO ACQUISITIONS, INC., a Pennsylvania
Corporation, WEST VIRGINIA DEPARTMENT
OF ADMINISTRATION, PURCHASING
DIVISION, a West Virginia Agency, WEST
VIRGINIA DEPARTMENT OF HEALTH AND
HUMAN RESOURCES, a West Virginia Agency,
ANGELA HOBBS, an individual, and KRISTYN
TAYLOR, an individual,**

     **Defendants.**

## ANSWER AND AFFIRMATIVE DEFENSES OF
## INNOVATIVE RESOURCE GROUP, LLC d/b/a
## APS HEALTHCARE MIDWEST AND KEPRO ACQUISITIONS, INC.

For their Answer to the Complaint filed by Plaintiff West Virginia Medical Institute, Inc.

("WVMI"), Defendants Innovative Resource Group, LLC d/b/a APS Healthcare Midwest ("APS

Healthcare Midwest") and KEPRO Acquisitions, Inc. ("KEPRO") (collectively with APS

Healthcare Midwest "APS"), by counsel, Webster J. Arceneaux, III, Ramonda C. Lyons and

Lewis Glasser Casey & Rollins, PLLC, state as follows:

     1.    APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph

1 of the Complaint.

     2.    APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph

2 of the Complaint.

3.      APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph 3 of the Complaint.

4.      The allegations set forth in Paragraph 4 of the Complaint are not directed to APS Healthcare Midwest and KEPRO and therefore do not require a response from these Defendants.

5.      The allegations set forth in Paragraph 5 of the Complaint are not directed to APS Healthcare Midwest and KEPRO and therefore do not require a response from these Defendants.

6.      The allegations set forth in Paragraph 6 of the Complaint are not directed to APS Healthcare Midwest and KEPRO and therefore do not require a response from these Defendants.

7.      The allegations set forth in Paragraph 7 of the Complaint are not directed to APS Healthcare Midwest and KEPRO and therefore do not require a response from these Defendants.

8.      APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 8 of the Complaint.

9.      APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 9 of the Complaint.

10.      In response to Paragraph 10 of the Complaint, APS Healthcare Midwest and KEPRO admit that Hobbs and Taylor were formerly employees of WVMI and that they are now employed with APS Healthcare Midwest. KEPRO denies that either Hobbs or Taylor is its employee. The remaining allegations set forth in Paragraph 10 of the Complaint are not directed to APS Healthcare Midwest and KEPRO and therefore do not require a response from these Defendants.

11.     APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph 11 of the Complaint.  The allegations set forth in Paragraph 11 are not directed to KEPRO and do not require a response from KEPRO.

12.     APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph 12 of the Complaint with the exception of the time period during which WVMI provided such services to West Virginia's Medicaid program.  APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegation as to the time period during which WVMI provided such services to West Virginia's Medicaid program and therefore deny same and demand strict proof thereof.

13.     APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph 13 of the Complaint.

14.     APS Healthcare Midwest denies the allegations set forth in Paragraph 14 of the Complaint and affirmatively states that it responded to the RFP with a bid ("Bid") and listed WVMI as a proposed subcontractor.  Paragraph 14 is not directed to KEPRO and does not require a response from KEPRO.

15.     In response to Paragraph 15 of the Complaint, APS Healthcare Midwest admits that it submitted the Bid and that WVMI was listed as the proposed subcontractor for utilization review and prior authorizations pursuant to an agreement between the parties.  APS Healthcare Midwest denies the remaining allegations set forth in Paragraph 15.  Paragraph 15 is not directed to KEPRO and does not require a response from KEPRO.

16.     In response to Paragraph 16 of the Complaint, APS Healthcare Midwest states that the Bid speaks for itself.   Paragraph 16 is not directed to KEPRO and does not require a response from KEPRO.

17.     In response to Paragraph 17 of the Complaint, APS Healthcare Midwest states that the Bid speaks for itself.   Paragraph 17 is not directed to KEPRO and does not require a response from KEPRO.

18.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 18 of the Complaint.

19.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 19 of the Complaint and affirmatively state that the DOA awarded contract BMS90007 to APS Healthcare Midwest, not WVMI.

20.     Defendants APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 20 of the Complaint.

21.     Defendant APS Healthcare Midwest states that the Contract speaks for itself.  In further response, APS Healthcare Midwest states that the phrase "critical subcontractor" does not appear in the Contract.  Rather, the Bid, which was incorporated by reference into the Contract, merely proposes that WVMI serve as a subcontractor as to certain services.  The allegations set forth in Paragraph 21 of the Complaint are not directed to KEPRO and therefore do not require a response from KEPRO.

22.     Defendants APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 22 of the Complaint and affirmatively state that APS Healthcare Midwest was awarded the Contract.

23.     In response to Paragraph 23 of the Complaint, APS Healthcare Midwest admits that after it was awarded the Contract, it entered into a Letter of Agreement ("LOA") with WVMI under which it agreed to subcontract certain services to WVMI.  In further response, APS

Healthcare Midwest states that the LOA speaks for itself.  Paragraph 23 is not directed to KEPRO and therefore does not require a response from KEPRO.

24.     In response to Paragraph 24 of the Complaint, APS Healthcare Midwest states that the LOA speaks for itself.  Paragraph 24 is not directed to KEPRO and therefore does not require a response from KEPRO.

25.     In response to Paragraph 25 of the Complaint, APS Healthcare Midwest states that the LOA speaks for itself.  Paragraph 25 is not directed to KEPRO and therefore does not require a response from KEPRO.

26.     In response to Paragraph 26 of the Complaint, APS Healthcare Midwest states that the LOA speaks for itself.  In further response, APS Healthcare Midwest states that the phrase "critical subcontractor" does not appear in the LOA.  Rather, the LOA merely provides that "WVMI shall provide services as a subcontractor to APS under the Prime Contract." Paragraph 26 is not directed to KEPRO and therefore does not require a response from KEPRO.

27.     In response to Paragraph 27 of the Complaint, APS Midwest Healthcare denies the allegation that WVMI performed its duties under the Contract and affirmatively states that WVMI was not a party to the Contract.  APS Healthcare Midwest admits the remaining allegations set forth in Paragraph 27.  Paragraph 27 is not directed to KEPRO and therefore does not require a response from KEPRO.

28.     APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph 28 of the Complaint.

29.     In response to Paragraph 29 of the Complaint, APS Healthcare Midwest admits that it and WVMI amended the LOA and that the First Extension included the phrase "co-terminous with the Prime Contract"; however, the LOA also included a termination provision

under which either party could terminate the agreement prior to termination of the Contract. APS Healthcare Midwest and KEPRO deny the remaining allegations set forth in Paragraph 29 of the Complaint and affirmatively state that neither the Contract nor the LOA include the phrase "critical subcontractor" and that neither DHHR nor DOA were parties to the LOA.

30.     APS Healthcare Midwest admits the allegations set forth in Paragraph 30 of the Complaint.  Paragraph 30 is not directed to KEPRO and therefore does not require a response from KEPRO.

31.     In response to Paragraph 31 of the Complaint, APS Healthcare Midwest states that the Extension Amendment speaks for itself.  Paragraph 31 is not directed to KEPRO and therefore does not require a response from KEPRO.

32.     APS Healthcare Midwest denies the allegations set forth in Paragraph 32 of the Complaint.  In further response, APS Healthcare Midwest states that the Extension Agreement speaks for itself and that the phrase "critical subcontractor" does not appear in the Extension Agreement. In addition, APS Healthcare Midwest states that the DHHR and DOA were not parties to the Extension Agreement and therefore had no intent related to the Extension Agreement.  Paragraph 32 is not directed to KEPRO and therefore does not require a response from KEPRO.

33.     APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph 33 of the Complaint.

34.     Paragraph 34 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants.

35.     APS Healthcare Midwest denies the allegations set forth in Paragraph 35 of the Complaint.  In further response to Paragraph 35, APS Healthcare Midwest states it intended to

submit a bid to the Upcoming RFP and was negotiating a potential subcontract with WVMI as to certain services.   Paragraph 35 is not directed to KEPRO and therefore does not require a response from KEPRO.

36.     APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph 36 of the Complaint.

37.     APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph 37 of the Complaint.

38.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 38 of the Complaint as presented therein.  In further response, APS Healthcare Midwest and KEPRO state that an actual conflict existed by virtue of contractual obligations with the United States Centers for Medicare and Medicaid Services which prohibited APS Healthcare Midwest from subcontracting with WVMI on an extended basis.

39.     In response to Paragraph 39 of the Complaint, APS Healthcare Midwest and KEPRO deny that the conflict was "specious" and state that the May 29, 2015 letter speaks for itself.

40.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 40 of the Complaint as presented and admits that it acted in conformity with the May 29, 2015 letter in negotiating an extension of the LOA with WVMI.

41.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 41 of the Complaint.

42.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 42 of the Complaint.

43.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 43 of the Complaint.

44.     Defendants APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 44 of the Complaint.

45.     In response to Paragraph 45 of the Complaint, APS Healthcare Midwest and KEPRO state that the quoted statutory provisions speak for themselves and deny that they violated the statutory provisions.

46.     APS Healthcare Midwest and KEPRO state that the quoted excerpt from the First Extension speaks for itself and deny the allegations set forth in Paragraph 46 of the Complaint.

47.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 47 of the Complaint.

48.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 48 of the Complaint.

49.     KEPRO denies the allegations set forth in Paragraph 49 of the Complaint and states that the quoted excerpt from an e-mail exchange between the parties speaks for itself. Paragraph 49 is not directed to APS Healthcare Midwest and therefore does not require a response from APS Healthcare Midwest.

50.     APS Healthcare Midwest and KEPRO admit that the parties ultimately agreed upon a Four-Month Extension, but deny the remaining allegations set forth in Paragraph 50 of the Complaint.

51.     APS Healthcare Midwest and KEPRO admit that the Four-Month Extension was executed on June 10, 2015 and that the First Extension expired on May 31, 2015, but deny the remaining allegations set forth in Paragraph 51 of the Complaint.

52.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 52 of the Complaint.

53.     Paragraph 53 of the Complaint sets forth WVMI's reasoning in entering into the Four-Month Extension and is not directed to APS Healthcare Midwest or KEPRO.  As such, it does not require a response from these defendants.

54.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 54 as presented therein, but admit that APS Healthcare Midwest began seeking qualified candidates for employment.

55.     APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations in Paragraph 55 regarding the number of WVMI employees that have resigned and therefore deny same and demand strict proof thereof. APS Healthcare Midwest and KEPRO deny the remaining allegations set forth Paragraph 55.

56.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 56 of the Complaint.

57.     In response to Paragraph 57 of the Complaint, APS Healthcare Midwest and KEPRO deny the implication  that WVMI is party to the Contract and affirmatively state that the Contract was awarded to APS Healthcare Midwest.  APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the remaining allegations set forth in Paragraph 57 of the Complaint and therefore deny same and demand strict proof thereof.

58.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 58 of the Complaint.

59.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 59 of the Complaint.

60.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 60 of the Complaint.

61.     In response to Paragraph 61 of the Complaint, APS Healthcare Midwest and KEPRO admit upon information and belief that WVMI has performed under the LOA, Extension Agreement and Four-Month Extension, but deny the remaining allegations set forth therein.     In further response, APS Healthcare Midwest and KEPRO deny the implication that WVMI is party to the Contract and affirmatively state that the Contract was awarded to APS Healthcare Midwest.

62.     In response to Paragraph 62 of the Complaint, APS Healthcare Midwest and KEPRO deny that WVMI was entitled to an extension of the LOA commensurate with the Second Extension of the Contract between APS Healthcare Midwest and DHHR and that it is "poaching" WVMI employees.  In further response, APS Healthcare Midwest and KEPRO state that there is no contractual or other prohibition that would preclude APS Healthcare Midwest from extending employment offers to WVMI employees.  APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the remaining allegations set forth in Paragraph 62 of the Complaint and therefore deny same and demand strict proof thereof.

63.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 63 of the Complaint.

64.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 64 of the Complaint.

65.     APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph 65 of the Complaint.

66.     Paragraph 66 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants. To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 66 of the Complaint and therefore deny same and demand strict proof thereof.

67.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 67 of the Complaint and affirmatively state that Hobbs and Taylor applied for employment with APS Healthcare Midwest.

68.     Paragraph 68 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants. To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 68 of the Complaint and therefore deny same and demand strict proof thereof.

69.     Paragraph 69 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants. To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 69 of the Complaint and therefore deny same and demand strict proof thereof.

70.     Paragraph 70 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants. To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 70 of the Complaint and therefore deny same and demand strict proof thereof.

71.     Paragraph 71 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants.  To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 71 of the Complaint and therefore deny same and demand strict proof thereof.

72.     In response to Paragraph 72 of the Complaint, APS Healthcare Midwest and KEPRO deny that the referenced emails and documents are in their possession.   The remaining allegations set forth in Paragraph 72 are not directed to APS Healthcare Midwest and KEPRO and therefore do not require a response from these Defendants.  To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the remaining allegations set forth in Paragraph 72 and therefore deny same and demand strict proof thereof.

73.     In response to Paragraph 73 of the Complaint, APS Healthcare Midwest and KEPRO deny that the referenced emails and documents are in their possession.   The remaining allegations set forth in Paragraph 73 are not directed to APS Healthcare Midwest and KEPRO and therefore do not require a response from these Defendants.  To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the remaining allegations set forth in Paragraph 73 and therefore deny same and demand strict proof thereof.

**COUNT I: Corrupt Actions to Lessen Competition in Violation of W.Va. Code § 5A-3-31**

*Defendants APS Healthcare Midwest and KEPRO*

74 – 78.     In conjunction with the filing of this Answer, APS Healthcare Midwest  and KEPRO are filing a motion to dismiss with regard to Count  I of the Complaint. Therefore, substantive responses to Paragraphs 74 through 78 of the Complaint are not required at this time.

In the event the motion to dismiss is denied, APS Healthcare Midwest and KEPRO will respond to the allegations set forth in Paragraphs 74 through 78 pursuant to the Federal Rules of Civil Procedure.

## COUNT II: Breach of Contract

*Defendant APS Healthcare Midwest*

79.     Defendant APS Healthcare Midwest reasserts and restates its responses to Paragraphs 1 through 78 of the Complaint as if set forth fully herein.

80.     Defendant APS Healthcare Midwest denies the allegations set forth in Paragraph 80 of the Complaint and affirmatively states that the WVMI is not a party to the Contract, that the phrase "critical subcontractor" does not appear in the Contract.

81.     Defendant APS Healthcare Midwest denies the allegations set forth in Paragraph 81 of the Complaint.

82.     Defendant APS Healthcare Midwest denies the allegations set forth in Paragraph 82 of the Complaint.

83.     Defendant APS Healthcare Midwest denies the allegations set forth in Paragraph 83 of the Complaint.

84.     Defendant APS Healthcare Midwest denies the allegations set forth in Paragraph 84 of the Complaint.

85.     Defendant APS Healthcare Midwest denies the allegations set forth in Paragraph 85 of the Complaint.

86.     Defendant APS Healthcare Midwest denies the allegations set forth in Paragraph 86 of the Complaint.

87.     Defendant APS Healthcare Midwest denies that Plaintiff is entitled to any measure of relief as requested in Paragraph 87 of the Complaint.

## COUNT III: Breach of Duty of Good Faith and Fair Dealing

*Defendant APS Healthcare Midwest*

88 - 92.  In conjunction with the filing of this Answer, APS Healthcare Midwest is filing a motion to dismiss with regard to Count Three of the Complaint. Therefore, substantive responses to Paragraphs 88 through 92 of the Complaint are not required at this time.  In the event the motion to dismiss is denied, APS Healthcare Midwest will respond to the allegations set forth in Paragraphs 88 through 92 pursuant to the Federal Rules of Civil Procedure.

## COUNT IV: Tortious Interference with Contractual Relations

*Defendant KEPRO*

93 – 101.  In conjunction with the filing of this Answer, KEPRO is filing a motion to dismiss with regard to Count Four of the Complaint. Therefore, substantive responses to Paragraphs 93 through 101 of the Complaint are not required at this time.  In the event the motion to dismiss is denied, KEPRO will respond to the allegations set forth in Paragraphs 93 through 101 pursuant to the Federal Rules of Civil Procedure.

## COUNT V: Tortious Interference with Contractual Relations

*Defendants APS Healthcare Midwest and KEPRO*

102 - 107.  Defendants APS Healthcare Midwest and KEPRO are filing a motion to dismiss with regard to Count Five of the Complaint. Therefore, substantive responses to Paragraphs 102 through 107 of the Complaint are not required at this time.  In the event the motion to dismiss is denied, APS Healthcare Midwest and KEPRO will respond to the

allegations set forth in Paragraphs 102 through 107 pursuant to the Federal Rules of Civil Procedure.

## COUNT VI: Declaratory Relief

*Defendants APS Healthcare Midwest, KEPRO, DOA, and DHHR*

108.     APS Healthcare Midwest and KEPRO reassert and restate their responses to Paragraphs 1 through 107 of the Complaint as if set forth fully herein.

109.     APS Healthcare Midwest and KEPRO deny the allegation set forth in Paragraph 109 of the Complaint that the Bid constituted an offer to employ WVMI as a "critical subcontractor" and admit the remaining allegations set forth therein.  In further response, APS Healthcare Midwest and KEPRO deny the implication that APS Healthcare Midwest was contractually required to use a subcontractor to perform utilization review and prior authorization services under the Contract.

110.     APS Healthcare Midwest and KEPRO deny the allegation set forth in Paragraph 110 of the Complaint.

111.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 111 of the Complaint.

112.     In response to Paragraph 112 of the Complaint, APS Healthcare Midwest and KEPRO state that the Contract and RFP speak for themselves.  In further response, APS Healthcare Midwest and KEPRO deny the implication that APS Healthcare Midwest was contractually or otherwise required to utilize a subcontractor under the Contract.

113.     APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 113 and affirmatively state that, although neither the First nor Second Extension of the Contract changed the material terms of the Contract, the phrase "critical subcontractor" does not appear in

the RFP, the Bid or the Contract.  In further response, APS Healthcare Midwest denies the implication that it was contractually or otherwise required to continue to utilize a subcontractor under the Contract.

114.   In response to Paragraph 114 of the Complaint, APS Healthcare Midwest and KEPRO state that the RFP speaks for itself.  In further response, APS Healthcare Midwest and KEPRO deny the implication that APS Healthcare Midwest was contractually or otherwise required to continue to utilize a subcontractor under the Contract.

115.   APS Healthcare Midwest and KEPRO admit the allegations set forth in Paragraph 115 of the Complaint, but deny the implication that APS Healthcare Midwest was contractually or otherwise required to utilize a subcontractor under the Contract for utilization review and prior authorization services.

116.   APS Healthcare Midwest and KEPRO admit that the DHHR accepted APS Healthcare Midwest's Bid, but deny the implication that APS Healthcare Midwest was contractually or otherwise required to utilize a subcontractor under the Contract for utilization review and prior authorization services.

117.   In response to Paragraph 117 of the Complaint, APS Healthcare Midwest and KEPRO state that the RFP and Contract speak for themselves, but deny the implication that  APS Healthcare Midwest was contractually required to obtain a change order before eliminating a subcontractor and completing the services previously performed by the subcontractor.

118.   In response to Paragraph 118 of the Complaint, APS Healthcare Midwest and KEPRO state that the RFP and Contract speak for themselves, but deny the implication that APS Healthcare Midwest was contractually required to obtain a change order before eliminating a subcontractor and completing the services previously performed by the subcontractor.

119.   APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 119 of the Complaint.

120.   In response to Paragraph 120 of the Complaint, APS Healthcare Midwest and KEPRO deny that WVMI is a "critical subcontractor", but admit that APS Healthcare Midwest has not sought, nor has DOA granted, a change order regarding WVMI's role as a subcontractor. In further response, APS Healthcare Midwest and KEPRO deny the implication that APS Healthcare Midwest was contractually required to obtain a change order before eliminating a subcontractor and completing the services previously performed by the subcontractor.

121.   APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 121 of the Complaint.

122.   APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 122 of the Complaint.

123.   APS Healthcare Midwest and KEPRO deny the allegations set forth in Paragraph 123 of the Complaint and affirmatively state that WVMI has no direct interest in the Contract.

124.   In response to Paragraph 124 of the Complaint, APS Healthcare Midwest and KEPRO admit that there is controversy between WVMI and APS Healthcare Midwest, but deny the remaining allegations set forth in Paragraph 124.

125.   APS Healthcare Midwest and KEPRO deny that Plaintiff is entitled to any measure of relief as requested in Paragraph 125 of the Complaint.

126.   APS Healthcare Midwest and KEPRO deny that Plaintiff is entitled to any measure of relief as requested in Paragraph 126 of the Complaint.

### COUNT VII: Violations of the West Virginia Computer Crimes and Abuse Act

127.    Defendants APS Healthcare Midwest and KEPRO reassert and restate their responses to Paragraphs 1 through 126 of the Complaint as if set forth fully herein.

128.    Paragraph 128 of the Complaint is not directed to APS Healthcare Midwest or KEPRO and therefore does not require a response from these Defendants.  To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 128 of the Complaint and therefore deny same and demand strict proof thereof.

129.    Paragraph 129 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants.  To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 129 of the Complaint and therefore deny same and demand strict proof thereof.

130.    Paragraph 130 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants.  To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 130 of the Complaint and therefore deny same and demand strict proof thereof.

131.    Paragraph 131 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants.  To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 131 of the Complaint and therefore deny same and demand strict proof thereof.

132.     Paragraph 132 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants.  To the extent a response is required, APS Healthcare Midwest and KEPRO deny that Plaintiff is entitled to any measure of relief as requested in Paragraph 132 of the Complaint.

**COUNT VIII: Violations of the Uniform Trade Secrets Act**

133.     Defendants APS Healthcare Midwest and KEPRO reassert and restate their responses to Paragraphs 1 through 132 of the Complaint as if set forth fully herein.

134.     In response to Paragraph 134, APS Healthcare Midwest and KEPRO deny that Hobbs and Taylor acted as their employees or agents.  The remaining allegations set forth in Paragraph 134 are not directed to APS Healthcare Midwest and KEPRO and therefore do not require a response.  To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 134 of the Complaint and therefore deny same and demand strict proof thereof.

135.     Paragraph 135 of the Complaint is not directed to APS Healthcare Midwest or KEPRO and therefore does not require a response from these Defendants.  To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 135 of the Complaint and therefore deny same and demand strict proof thereof.

136.     Paragraph 136 of the Complaint is not directed to APS Healthcare Midwest or KEPRO and therefore does not require a response from these Defendants.  To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 136 of the Complaint and therefore deny same and demand strict proof thereof.

137.    Paragraph 137 of the Complaint is not directed to APS Healthcare Midwest or KEPRO and therefore does not require a response from these Defendants.   To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 137 of the Complaint and therefore deny same and demand strict proof thereof.

138.    Paragraph 138 of the Complaint is not directed to APS Healthcare Midwest or KEPRO and therefore does not require a response from these Defendants.   To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 138 of the Complaint and therefore deny same and demand strict proof thereof.

139.    To the extent Paragraph 139 is directed to APS Healthcare Midwest and KEPRO, they deny that Plaintiff is entitled to any measure of damages as requested in Paragraph 139 of the Complaint.

**COUNT IX: Conversion**

140.    Defendants APS Healthcare Midwest and KEPRO reassert and restate their responses to Paragraphs 1 through 139 of the Complaint as if set forth fully herein.

141.    Paragraph 141 of the Complaint is not directed to APS Healthcare Midwest or KEPRO and therefore does not require a response from these Defendants.   To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 141 of the Complaint and therefore deny same and demand strict proof thereof.

142.    Paragraph 142 of the Complaint is not directed to APS Healthcare Midwest or KEPRO and therefore does not require a response from these Defendants.   To the extent a

response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 142 of the Complaint and therefore deny same and demand strict proof thereof.

143.    To the extent Paragraph 143 is directed to APS Healthcare Midwest and KEPRO, they deny that Plaintiff is entitled to any measure of damages as requested in Paragraph 143 of the Complaint.

## COUNT X: Breach of Contract

### *Defendants Hobbs and Taylor*

144.    Defendants APS Healthcare Midwest and KEPRO reassert and restate their responses to Paragraphs 1 through 143 of the Complaint as if set forth fully herein.

145.    Paragraph 145 of the Complaint is not directed to APS Healthcare Midwest or KEPRO and therefore does not require a response from these Defendants.   To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 145 of the Complaint and therefore deny same and demand strict proof thereof.

146.    Paragraph 146 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants.   To the extent a response is required, APS Healthcare Midwest and KEPRO are without sufficient information or knowledge to either admit or deny the allegations set forth in Paragraph 146 of the Complaint and therefore deny same and demand strict proof thereof.

147.    Paragraph 147 of the Complaint is not directed to APS Healthcare Midwest and KEPRO and therefore does not require a response from these Defendants.

148.    APS Healthcare Midwest and KEPRO deny any and all averments of fact set forth in the Complaint which have not been specifically admitted herein above.

## FIRST AFFIRMATIVE DEFENSE

The Plaintiff's Complaint fails to state a claim upon which relief may be granted and, therefore, should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## SECOND AFFIRMATIVE DEFENSE

The Plaintiff failed to mitigate its damages, if any, as required by law.

## THIRD AFFIRMATIVE DEFENSE

APS Healthcare Midwest and KEPRO assert all affirmative defenses available to them under West Virginia statutory and case law as determined through the discovery process.

## FOURTH AFFIRMATIVE DEFENSE

Any breach of duty, if any, by this Defendant was not a proximate cause of the injuries or damages alleged in the Complaint as the same may prove applicable as discovery proceeds and as the evidence is developed in this case.

## FIFTH AFFIRMATIVE DEFENSE

The Plaintiff has unclean hands and thus is barred from seeking equitable relief.

## SIXTH AFFIRMATIVE DEFENSE

APS Healthcare Midwest and KEPRO reserve any and all affirmative defenses set forth in Rule 8(c) of the Federal Rules of Civil Procedure.

INNOVATIVE RESOURCE GROUP, LLC d/b/a
APS HEALTHCARE MIDWEST and KEPRO
ACQUISITIONS, INC.

*By Counsel*

LEWIS GLASSER CASEY & ROLLINS, PLLC


/s/ Ramonda C. Lyons
Webster J. Arceneaux, III (WVSB 155)
Ramonda C. Lyons (WVSB 6927)
300 Summers Street, Suite 700
P.O. Box 1746
Charleston, West Virginia  25326
Phone:  304-345-2000
Fax:     304-343-7999

23

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2015, I electronically filed the *Answer and Affirmative Defenses of Innovative Resource Group, LLC d/b/a APS Healthcare Midwest and KEPRO Acquisitions, Inc.* with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

> Carte P. Goodwin, Esq.
> Goodwin & Goodwin, LLP
> 300 Summers Street, Suite 1500
> Charleston, WV  25301
>   *Counsel for Plaintiff*

> Christopher S. Dodrill, Esq.
> Office of the WV Attorney General
> 812 Quarrier Street, Floor 6
> Charleston, WV  25301
>   *Counsel for Defendant West Virginia Department of Health and*
>   *Human Resources*

> Kelli D. Talbott, Esq.
> Office of the WV Attorney General
> 404 Hamlet Way
> Charleston, WV  25314
>   *Counsel for Defendant West Virginia Department of Administration,*
>   *Purchasing Division*

> Michael J. Del Giudice (WVSB #982)
> Timothy J. Lafon (WVSB #2123)
> Ciccarello, Del Giudice & Lafon
> 1219 Virginia Street, E., Suite 100
> Charleston, West Virginia  25301
>   *Counsel for Angela Hobbs and Kristyn Taylor*

/s/ Ramonda C. Lyons
Ramonda C. Lyons
