IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**WEST VIRGINIA MEDICAL INSTITUTE, INC.,**

    Plaintiff,

v.                                              **CIVIL ACTION NO. 2:15-cv-13449**

**INNOVATIVE RESOURCE GROUP, LLC
d/b/a APS HEALTHCARE MIDWEST, a
Wisconsin Limited Liability Company,
KEPRO ACQUISITIONS, INC., a Pennsylvania
Corporation, WEST VIRGINIA DEPARTMENT
OF ADMINISTRATION, PURCHASING
DIVISION, a West Virginia Agency, WEST
VIRGINIA DEPARTMENT OF HEALTH AND
HUMAN RESOURCES, a West Virginia Agency,
ANGELA HOBBS, an individual, and KRISTYN
TAYLOR, an individual,**

    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
INNOVATIVE RESOURCE GROUP, LLC AND KEPRO ACQUISITION, INC.'S
MOTION TO DISMISS COUNTS I, III, IV, AND V PURSUANT TO RULE 12(b)(6)
OF THE FEDERAL RULES OF CIVIL PROCECDURE**

I.     **INTRODUCTION**

Plaintiff West Virginia Medical Institute, Inc.'s ("Plaintiff" or "WVMI") Complaint sets out six purported causes of action against Defendants Innovative Resource Group, LLC d/b/a APS Healthcare Midwest ("APS Healthcare Midwest") and KEPRO Acquisitions, Inc. ("KEPRO") (collectively "Moving Defendants") – Count I (Corrupt Actions to Lessen Competition in Violation of W. Va. Code § 5A-3-31 (the "Corruption Claim")), Count II (Breach of Contract ("Breach of Subcontract Claim")), Count III (Breach of Duty of Good Faith and Fair

Dealing ("Breach of Duty Claim")), Count IV (Tortious Interference with Contractual Relations ("Tortious Interference with Subcontract Claim")), Count V (Tortious Interference with Contractual Relations ("Tortious Interference with Employment Contract Claim"), Count VI - Declaratory Relief (the "Declaratory Judgment Claim").[1] Compl., at ¶¶ 74 through 126. This matter involves a service contract between APS Healthcare Midwest and the West Virginia Department of Health and Human Services ("DHHR") (the "Prime Contract") under which APS Healthcare Midwest provides services to the DHHR. Compl. at ¶¶ 11 through 22. In turn, APS Healthcare Midwest subcontracted certain services to WVMI under a Letter of Agreement ("LOA" or "Subcontract"). *Id*., at 23 through 64.

As set forth below, Counts I, III, IV and V fail as a matter of law and must be summarily dismissed.

## II. FACTUAL BACKGROUND

On or about January 25, 2009, DHHR and West Virginia Department of Administration , Purchasing Division ("DOA") released the Request for Proposals as to Contract BMS90007 ("RFP") seeking bids for the provision of certain services to three DHHR bureaus: the Bureau for Medical Services, the Bureau for Children and Families, and the Bureau for Health and Health Care Facilities. Compl. at ¶ 11; *see also* Exhibit 1 (the RFP). APS Healthcare Midwest submitted a bid in response to the RFP in which WVMI was listed as the proposed subcontractor for reviewer resources. Compl. at ¶ 15; *see also* Exhibit 2, p. 1-2 (Excerpts from APS Healthcare Midwest's Bid).[2] Contract BMS9007 (the "Contract") was awarded to APS Healthcare Midwest. Compl. at ¶ 19; *see also* Exhibit 3 (Bid Tabulation) (noting in a

---

[1] The remaining counts set forth in the Complaint are directed to Angela Hobb ("Hobbs") and Kristyn Taylor ("Taylor") (collectively with Hobbs, the "Individual Defendants). Compl. at ¶¶ 127 through 147.

[2] The Bid is over a thousand pages in length. As such, only the pertinent provisions have been included the exhibit.

2

handwritten notation that APS Healthcare Midwest -- not APS Healthcare Midwest and WVMI – was the successful bidder) and Exhibit 4, p. 1 (Letter of Agreement between WVMI and APS Healthcare Midwest dated November 9, 2010 ("LOA")) (. . . (Purchase Order No. BMS90007) awarded to APS (the Prime Contract). Effective December 1, 2009, APS was awarded the Prime Contract.)

Thereafter, APS Healthcare Midwest and WVMI entered into the LOA. Compl. ¶ 23, *see also* Exhibit 4. The LOA states that "[t]he parties intend that WVMI shall provide services as a subcontractor to APS under the Prime Contract." Compl. ¶ 24, Exhibit at p. 1. The Contract's original expiration date was November 30, 2014 looming, but DHHR extended the Contract for six months until May 31, 2015. Compl. ¶ 28. Thereafter, on or about December 16, 2014, APS and WVMI amended their LOA ("Extension Amendment") to extend its provisions until May 31, 2015. Compl. ¶ 30.

As the extended May 31, 2015, expiration date approached, the State had yet to issue the RFP for the next contract. Thus, on or about May 4, 2015, DHHR once again extended the Contract for another six months until November 30, 2015 ("Second Extension"). Compl. ¶ 33. WVMI and APS Healthcare agreed to a four-month extension of the LOA, until October 1, 2015 ("Four-Month Extension"). Compl. ¶ 50.

### III. LEGAL STANDARD

In evaluating a complaint to determine whether it states a claim upon which relief can be granted, a court must construe it in favor of the plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (clarifying the plausibility standard articulated in *Twombly*). Under the *Iqbal* and *Twombly*

standards, merely regurgitating the applicable legal standard for a cause of action is insufficient to withstand a motion to dismiss. *Iqbal*, 129 S. Ct. at 149. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . ." *Id.* Courts should not "accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 129 S. Ct. at 1950, quoting *Twombly*, 550 U.S. at 555.

A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (citation omitted). "When a federal court reviews the sufficiency of a complaint, . . . [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), overruled on other grounds by *Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

Generally, matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss. *See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.,* 566 F.3d 150 (4th Cir. 2009). However, a defendant may introduce documents that were not attached as exhibits to the complaint in support of its motion to dismiss if the documents are referenced in the complaint or are otherwise integral to the claims asserted. *See Jarmuth v. Cox,* 2007 U.S. Dist. LEXIS 75732, 8 (N.D. W. Va. Sept. 28, 2007) ("[t]his Court may consider documents referenced in the Amended Complaint when considering a motion to dismiss. Materials that are part of the public record or that do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss without converting the motion to a motion for

summary judgment."); *see also Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991); *see also* 5 WRIGHT & MILLER, *supra*, § 1327, at 762-63. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied. *See White Consol. Indus.*, 998 F.2d at 1196. Hence, the Fourth Circuit has held that federal courts may "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, ***documents incorporated into the complaint by reference***." *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir.2009), (emphasis added). Federal courts may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir.2014).

### IV. ARGUMENT AND CITATION TO AUTHORITY

A. **WVMI'S Corruption Claim Fails as a Matter of Law Because the Predicate Statute, W. Va. Code § 5A-3-31, Does Not Create a Private Cause of Action. As such, the Corruption Claim Must be Dismissed.**

WVMI asserts that APS Healthcare Midwest and KEPRO's alleged actions violated and W. Va. Code § 5A-3-31. Compl. at ¶¶ 74 - 78. Specially, WVMI asserts that APS Healthcare Midwest and KEPRO violated W. Va. Code § 5A-3-31 as set forth below:

a. APS's bad faith attempts to squeeze WVMI out of its critical subcontractor role;

b. APS's concocted conflict of interest ruse;

c. APS's insistence on WVMI agreeing to forgo competing for the Upcoming RFP in exchange for obtaining the full six-month extension to which it is entitled; and

5

> d. APS's aggressive recruiting of WVMI's key employees to undercut WVMI's ability to perform under the Contract and to undercut WVMI's ability to submit a bid in the Upcoming RFP.

Compl. at ¶ 76. WVMI further alleges that it has suffered compensable damages and irreparable harm due to APS Healthcare Midwest and KEPRO's unlawful actions and requests a temporary restraining order, compensable damages, punitive damages and attorney fees and injunctive relief. *Id*. at ¶ 78. However, as set forth below, the Corruption Claim fails as a matter of law as the predicate statute does not create a private cause of action.

West Virginia Code § 5A-3-31 is a criminal statute that does not create a standalone civil cause action for the benefit of subcontractors such as WVMI. Under West Virginia law, a four-part test governs "whether a private cause of action exists based on a[n alleged] violation of a statute". *Jenkins v. JC Penney Cas. Ins. Co.*, 167 W. Va. 597, 280 S.E.2d 252, 253-54 (1981). The four (4) factors include:

> (i) whether the plaintiff is part of "the class for whose benefit the statute was enacted";
>
> (ii) legislative intent;
>
> (iii) whether a cause of action is "consistent with the underlying purposes of the legislative scheme"; and
>
> (iv) whether such would intrude into an area of federal authority.

*Hurley v. Allied Chem. Corp.*, 164 W. Va. 268, 262 S.E.2d 757, 760 (1980).

West Virginia Code § 5A-3-31 is a criminal statute and as such must be strictly construed. *State ex rel. Waller Chems. v. McNutt*, 152 W. Va. 186, 160 S.E.2d 170 (1968) (decided under prior law). The State is the ***only*** intended victim of violations of this code section. *See State v. Duncan*, 204 W. Va. 411, 513 S.E.2d 459 (1998) ("the State is the only

intended victim under W. Va. Code § 5A-3-30 (1990)"). Thus, WVMI is not part of the class for whose benefit the statute was enacted and the statute does not create a private cause of action.

As such, Count I of the Complaint fails as a matter of law and must be dismissed.

### B. WVMI'S Breach of Duty Claim Against APS Healthcare Midwest Fails as a Matter of Law and Must be Dismissed.

In Count II, WVMI alleges that APS Healthcare Midwest breached the duty of good faith and fair dealing it owed to WVMI with regard to the Subcontract. Compl. at ¶¶ 88 – 92. However, West Virginia law clearly does not recognize breach of the duty of good faith and fair dealing an independent cause of action separate and apart from breach of contract.[3] It is beyond cavil that the West Virginia Supreme Court of Appeals has declined to recognize an independent claim for a breach of the common law duty of good faith and has instead held that such a claim sounds in breach of contract. *See Evans v. United Bank, Inc.*, __ W.Va. __, 775 S.E.2d 500, 2015 W. Va. LEXIS 807 (June 16, 2015), *Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, 746 S.E.2d 568 (2013), *Corder v. Countrywide Home Loans, Inc.*, No. 2:10-0738, 2011 U.S. Dist. LEXIS 7669, 2011 WL 289343 at *3 (S.D.W.Va.2011).

As such, Count II of the Complaint fails as a matter of law and must be dismissed.

### C. WVMI's Tortious Interference with Subcontract Claim Against KEPRO Fails as a Matter of Law and Must be Dismissed.

In the Complaint, WVMI alleges that "KEPRO is not a party to the Contract, LOA, Extension Amendment, Four-Month Extension, or any other relevant agreements between APS, WVMI, DHHR, and DOA." Compl. at 96. WVMI further alleges that "u]pon information and belief, KEPRO intentionally interfered with the contractual and business relationship and interests that WVMI had with APS and with DHHR and DOA by directing APS to breach the

---

[3] Count II of the Complaint sets forth a breach of contract claim against APS Healthcare Midwest. APS Healthcare Midwest will be filing an answer to this claim and, at the appropriate time, seek dismissal of this claim as well.

7

Contract, LOA, Extension Amendment, Four-Month Extension, and other relevant agreements as described above and by attempting to unlawfully prevent WVMI from competing in the Upcoming RFP in violation of antitrust and state purchasing law." Compl. at 97.

The elements of a tortious interference claim under West Virginia law are:

(1) existence of a contractual or business relationship or expectancy;

(2) an intentional act of interference by a party outside that relationship or expectancy;

(3) proof that the interference caused the harm sustained; and

(4) damages.

*C. W. Dev. v. Structure, Inc.*, 185 W. Va. 462; 408 S.E.2d 41 (1991). As to the WVMI's purported contractual and business relationship with the DOA and DHHR, it is clear that no such relationship existed. The Bid, Bid Tabulation sheet and LOA all clearly demonstrate that APS Healthcare Midwest was the successful bidder and was awarded the Contract. Exhibits 2 through 4. Specifically, the Bid lists APS Healthcare Midwest as the vendor (not APS Healthcare Midwest and WVMI) and notes that WVMI is the proposed subcontractor. Exhibit 2, p. 1 and 1-1. The Bid Tabulation sheet includes a handwritten notation indicating that APS Healthcare Midwest was the successful bidder. Exhibit 3. Further, WVMI acknowledges as much in the LOA by stating that "[e]ffective December 1, 2009, APS was awarded the Prime Contract. In fact, WVMI does not allege that it submitted a Bid in response to the RFP. Exhibit 4, p. 1. As such, WVMI has failed to allege the existence of a contractual or business relationship or expectancy as to the DOA or DHHR to support its interference against KEPRO.

As to WVMI contractual and business relationship with APS Healthcare Midwest, WVMI acknowledges that APS Healthcare Midwest was acquired by KEPRO and that APS Healthcare Midwest is now a wholly owned subsidiary of KEPRO. Compl. at ¶ 9. As such,

8

WVMI has also acknowledged that APS Healthcare Midwest and KEPRO are now one legal entity and that the Contract with DHHR is now held by KEPRO.

In *Shrewsbery v. National Grange Mutual Insurance Co*., the West Virginia Supreme Court of Appeals held that a that a party to a contract cannot tortiously interfere with its own contract:

> It is impossible for one party to a contract to maintain against the other party to the contract a claim for tortious interference with the parties' own contract. Neither party is a stranger to the contract. Each party has agreed to be bound by the terms of the contract itself, and may not thereafter use a tort action to punish the other party for actions that are within its rights under the contract. As to the relations between agent and company, the contract governs. Thus, as parties to that contract, the insurance company could not be liable to the agent for interference with its own contract.

*Shrewsbery v. National Grange Mutual Insurance Co*., 183 W. Va. 322, 324. 395 S.E.2d 745, 747 (1990). Based upon the foregoing, any allegation that KEPRO interfered with a contract involving its subsidiary APS is wholly without merit. As such, the Tortious Interference with Subcontract Contract Claim set forth in Count V of the Complaint must be dismissed in its entirety.

### D. **WVMI's Tortious Interference with Employment Contract Claim Fails as a Matter of Law and Must be Dismissed.**

In Count V, WVMI alleges that it "had contractual and business relations with its employees" and that "KEPRO and APS . . . tortiously interfered with WVMI's contractual and business relations with its employees, as described herein, by aggressively recruiting them." Compl. at ¶¶ 103 and 105. However, WVMI does *not* allege that its purported contracts with the Individual Defendants required the employees to work for WVMI for a defined period of time or

that the purported contracts included a restrictive covenant prohibiting the employees from working for a competitor. *See* Compl.

As set forth above, the elements of a tortious interference claim under West Virginia law are:

(5) existence of a contractual or business relationship or expectancy;

(6) an intentional act of interference by a party outside that relationship or expectancy;

(7) proof that the interference caused the harm sustained; and

(8) damages.

*C. W. Dev. v. Structure, Inc*., 185 W. Va. 462; 408 S.E.2d 41 (1991). It is well established that West Virginia adheres to the a-will employment doctrine. Syl. Pt. 2, *Wright v. Standard Ultramarine & Color Co*., 141 W.Va. 368, 90 S.E.2d 459 (1955). As such, employers and employees alike are generally governed by the at-will employment doctrine. Pursuant to this principle, "[w]hen a contract of employment is of indefinite duration it may be terminated at any time by either party to the contract." *Id*. Thus, "an at-will employee serves at the will and pleasure of his or her employer and can be discharged at any time, with or without cause." *Kanagy v. Fiesta Salons, Inc*., 208 W.Va. 526, 529, 541 S.E.2d 616, 619 (2000) (internal citation omitted). Similarly, at-will employees such as the Individual Defendants are free to resign from employment ***at any time***. WVMI does ***not*** allege that the Individual Defendants were anything other than at-will employees. Stated somewhat differently, WVMI does ***not*** allege that the Individual Employees were contractually bound to continue in its employment for a specific period of time or that the contract contained a restrictive covenant prohibiting the employees from working for a competitor.

Thus, WVMI has failed to allege the existence of a contractual or business relationship or expectancy to support its interference claim against APS Healthcare Midwest and KEPRO. As such, the Tortious Interference with Employment Contract Claim set forth in Count V of the Complaint must be dismissed.

## V. CONCLUSION

WHEREFORE, for the reasons set forth above, Moving Defendants respectfully request that Counts I, III, IV and V of the Complaint be dismissed.

                                              INNOVATIVE RESOURCE GROUP, LLC d/b/a
                                              APS HEALTHCARE MIDWEST and KEPRO
                                              ACQUISITIONS, INC.

                                              *By Counsel*

LEWIS GLASSER CASEY & ROLLINS, PLLC


/s/ Ramonda C. Lyons
Webster J. Arceneaux, III, (WVSB 155)
Ramonda C. Lyons (WVSB 6927)
300 Summers Street, Suite 700
P.O. Box 1746
Charleston, West Virginia  25326
Phone:  304-345-2000
Fax:     304-343-7999

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2015, I electronically filed the *Memorandum of Law in Support of Innovation Resource Group, LLC and Kepro Acquisition, Inc.'s Motion to Dismiss Counts I, III, IV, and V* with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

 Carte P. Goodwin, Esq.
 Goodwin & Goodwin, LLP
 300 Summers Street, Suite 1500
 Charleston, WV  25301
  *Counsel for Plaintiff*

 Christopher S. Dodrill, Esq.
 Office of the WV Attorney General
 812 Quarrier Street, Floor 6
 Charleston, WV  25301
  *Counsel for Defendant West Virginia Department of Health and*
  *Human Resources*

 Kelli D. Talbott, Esq.
 Office of the WV Attorney General
 404 Hamlet Way
 Charleston, WV  25314
  *Counsel for Defendant West Virginia Department of Administration,*
  *Purchasing Division*

 Michael J. Del Giudice (WVSB #982)
 Timothy J. Lafon (WVSB #2123)
 Ciccarello, Del Giudice & Lafon
 1219 Virginia Street, E., Suite 100
 Charleston, West Virginia  25301
  *Counsel for Angela Hobbs and Kristyn Taylor*

       /s/ Ramonda C. Lyons
       Ramonda C. Lyons