IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**WEST VIRGINIA MEDICAL INSTITUTE, INC.,**

      Plaintiff,

v.                                                                Civil Action No.: 2:15-cv-13449

**INNOVATIVE RESOURCE GROUP, LLC**
**d/b/a APS HEALTHCARE MIDWEST, a**
**Wisconsin Limited Liability Company,**
**KEPRO ACQUISITIONS, INC., a Pennsylvania**
**Corporation, WEST VIRGINIA**
**DEPARTMENT OF ADMINISTRATION,**
**PURCHASING DIVISION, a West Virginia**
**Agency, WEST VIRGINIA DEPARTMENT OF**
**HEALTH AND HUMAN RESOURCES,**
**a West Virginia Agency, ANGELA HOBBS, an**
**individual, and KRISTYN TAYLOR, an**
**individual,**

      Defendants.

**MOTION TO REMAND AND REQUEST FOR EXPEDITED CONSIDERATION**

      COMES NOW Plaintiff West Virginia Medical Institute, Inc. ("WVMI") and moves this Court to remand this case back to the Circuit Court of Kanawha County and to require Defendants Innovative Resource Group, LLC d/b/a APS Healthcare Midwest ("APS") and KEPRO Acquisitions, Inc. ("KEPRO") to pay WVMI's expenses and costs associated with this bad faith removal.

      In their misguided attempted to deprive WVMI of its lawful choice of forum and to impermissively *delay* the requested injunctive relief, APS and KEPRO have once again removed

1

this dispute to federal court. To do so, they are forced to misstate the law, disregard the requirements of 28 U.S.C. § 1441, and ignore the applicable standard of review.

In fact, this is the second time that APS and KEPRO have used a bad-faith removal on the eve of WVMI's hearing on its Motion for Preliminary Injunction and Temporary Restraining Order ("Motion for Preliminary Injunction"). APS and KEPRO have used such well-timed procedural maneuvers to maximize the amount of time they have to continue their tortious acts and to inflict the most harm to their commercial competitor, WVMI.

Such blatant gamesmanship should not be rewarded. Because this Court lacks jurisdiction, this case should be remanded. Because the harm that WVMI is experiencing is irreparable, WVMI respectfully requests that this Motion receive expedited consideration by the Court. Additionally, WVMI requests that the Court enter a limited injunction to maintain the status quo between the parties until such time as the Defendants' specious jurisdictional arguments are rejected and the case is remanded to the Circuit Court of Kanawha County for a hearing on WVMI's Motion for Preliminary Injunction.

## I. Facts

As the Complaint explains, WVMI and APS currently provide services to West Virginia's Medicaid program pursuant to a six-year contract that will soon be re-bid. A mutual competitor, KEPRO, has since purchased APS and now both entities seek to squeeze WVMI out of the state contract in its final days in a tortious and bad-faith effort to eliminate competition in the upcoming re-bid. Simultaneously, KEPRO and APS are aggressively poaching WVMI's employees in an effort to undermine WVMI's ability to both perform currently and to compete in the re-bid. KEPRO's and APS's intent to stifle WVMI's competition was explicitly stated by its own

executive: "competing with us directly during the upcoming re-bid is not tenable to KEPRO." *See* Exhibit A.

WVMI filed its first Complaint and Request for Injunctive Relief on August 25, 2015, Civil Action No. 15-C-1615 ("First Civil Action") against APS, KEPRO, DOA, and DHHR. Three days later, on August 28, WVMI discovered that one of its poached employees, Defendant Angela Hobbs ("Hobbs"), had taken a significant amount of WVMI's computer data (including certain confidential and proprietary information) prior to her resignation and subsequent employment at APS. On August 31, 2015, (the same that Defendants removed the First Civil Action),[1] it was confirmed by WVMI's internal technology department that Hobbs had forwarded over one thousand (1,000) emails to her personal email accounts and downloaded over one hundred (100) documents to a personal USB drive prior to her departure. This computer data included confidential, proprietary, and trade secret information such as procedures, processes, criteria, and training materials — the exact kind of material that a competitor like APS or KEPRO would need to entirely replicate WVMI's business. Later that same day, it was also confirmed that another poached employee, Defendant Kristyn Taylor ("Taylor"), another departing WVMI employee, engaged in substantially similar behavior.

With this recently discovered information in hand and with the First Civil Action having been removed to this Court (despite the fact that DOA and DHHR were nondiverse defendants), WVMI voluntarily dismissed the First Civil Action pursuant to Rule 41(a) and filed a new Complaint incorporating the related claims against Hobbs and Taylor ("Second Civil Action"). By dismissing and filing the new Complaint in this fashion, WVMI was hoping to: (i) litigate the case in a forum with proper jurisdiction; (ii) assert the newly discovered and related claims against the

---

[1] APS and KEPRO filed their removal of the First Civil Action after close of business on August 31, 2015, the day before the first scheduled hearing on WVMI's Motion for Preliminary Injunction in State court.

new Defendants; and (iii) schedule a hearing on its Motion for Preliminary Injunction as quickly as possible.

To that end, the Circuit Court of Kanawha County scheduled a (second) hearing to consider WVMI's Motion for Preliminary Injunction for September 25, 2015. Yet, once again, APS and KEPRO filed the instant removal after close of business on the eve of the hearing. This procedural maneuver maximizes the amount of time that APS and KEPRO have to continue poaching WVMI's employees and to stifle competition in the upcoming re-bid of the Prime Contract. In particular, a key date for this irreparable harm is Thursday, October 1, 2015, at which time APS and KEPRO intend to prematurely terminate WVMI's duties to the State's Medicaid recipients under the subcontract. The premature October 1, 2015, termination of WVMI's subcontract forms the legal foundation of this lawsuit, including the related claims regarding the anti-competitive behavior and tortious acts committed by APS, KEPRO, and their newly recruited employees. It is particularly important that WVMI obtain injunctive relief prior to October 1 — or at the very least *a mere hearing* on injunctive relief, which WVMI has yet to have. The Complaint seeks a determination of the legal significance of this date, and if a hearing cannot be held until *afterwards*, APS's and KEPRO's torts will be a *fait accompli* and the most irreparable harm against WVMI will have been inflicted.

## II. This removal is frivolous on its face because there are four nondiverse defendants.

KEPRO and APS argue that this Court has diversity jurisdiction because WVMI is a West Virginia citizen, KEPRO is a Pennsylvania citizen, and APS is a Wisconsin citizen.[2] However, KEPRO and APS argue that the two West Virginia agencies, DOA and DHHR, as well as the two

---

[2] DOA and DHHR have not consented to this removal, thus violating the "rule of unanimity." *Mayo v. Bd. of Educ.*, 713 F. 3d 735, 741 (4th Cir. 2013). Accordingly, the removal is ineffective and requires remand back to the Circuit Court of Kanawha County. KEPRO and APS argue that DOA's and DHHR's consent is not necessary because they are fraudulently joined parties, but for the reasons stated further, this is unavailing.

West Virginia citizens, Hobbs and Taylor, were fraudulently joined "in an attempt to divest APS of their right to litigate this matter in a federal forum." Removal at ¶ 4. This argument is baseless and should be rejected.

### A. WVMI need only show some "glimmer of hope" against the nondiverse defendants.

In their argument for federal jurisdiction, APS and KEPRO go to great lengths to challenge the substantive merits of WVMI's claims against the agency defendants and the individual defendants. In so doing, they *conflate* the relative strengths of the claims (in their estimation) with the legal standard for fraudulent joinder. Indeed, the United States Court of Appeals for the Fourth Circuit has set a high bar for establishing that a nondiverse defendant has been fraudulently joined, requiring the removing party to prove either:

> That there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or
>
> That there has been outright fraud in the plaintiff's pleading of jurisdictional facts.
>
> The burden on the defendant claiming fraudulent joinder is heavy; the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor. A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.

*Marshall v. Manville Sales Corp.*, 6 F. 3d 229, 232–33 (4th Cir. 1993) (internal quotations, citations, and brackets omitted) (emphasis in original). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F. 3d 422, 424 (4th Cir. 1999). "Once the court identifies the glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id.* at 426.

### *B. DOA and DHHR are proper — and necessary — parties to this action.*

DOA and DHHR were joined because they have a direct interest in this litigation and, as such, are necessary parties. In fact, West Virginia law requires as much: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration . . . ." W. Va. Code § 55-13-11.

At the heart of this litigation is the overarching Prime Contract to which APS, DOA, and DHHR are parties and that specifically names WVMI as subcontractor. WVMI is a third-party beneficiary of that Prime Contract, it is the only subcontractor mentioned in it, and WVMI provides nearly 50% of the entire value of the contract. As such, the Prime Contract plays a central role in this litigation and the agencies are integral parties with substantial interests.

Astonishingly, APS and KEPRO ignore these simple facts and argue that WVMI's claims do not implicate the Prime Contract. They state that "WVMI is *not* seeking a declaration of rights, status or other legal relation vis-à-vis the DOA or the DHHR." Removal at ¶ 13 (emphasis in original). *That is patently false.* One of the central issues of this litigation is whether APS's elimination of WVMI as the critical subcontractor prior to the expiration of the Prime Contract is a change that necessitates a change order from DOA or DHHR pursuant to state purchasing law and pursuant to the Prime Contract itself. As WVMI requests in its prayer for declaratory judgment:

> WVMI respectfully requests that this Court . . . *[d]eclare that DOA and/or DHHR must approve a formal change order* before WVMI's role as a critical subcontractor under the Contract can be changed, modified, or eliminated in any way, as required by the [Prime[3]] Contract.

---

[3] The Complaint specifically defined "Contract" as the overarching "Prime Contract" to which APS, DOA, and DHHR are parties and that specifically names WVMI as subcontractor. WVMI is in fact the *only* subcontractor named in the Prime Contract, and APS specifically and conspicuously touted WVMI's subcontractor role in its submitted bid.

6

Compl. at ¶ 126(b) (emphasis added).  Obviously, this requests a declaration of legal relation vis-à-vis DOA and DHHR.

Certainly, KEPRO and APS are correct in that WVMI also seeks a declaration of its rights pursuant to the Letter of Agreement between WVMI and APS.  However, WVMI also seeks a declaration of the Prime Contract itself, and its interpretation is integral to WVMI's claims against KEPRO and APS.  "[T]here is a logical nexus between the status [that WVMI] asserts and the contract . . . sought to be adjudicated.  But for the contract the [harm] would not be taking place." *Shobe v. Latimer*, 253 S.E. 2d 54, 59 (W. Va. 1979) (citing *McGowan v. Maryland*, 366 U.S. 420 (1961)).  Moreover, the irreparable harm that WVMI is facing threatens a disruption of the services that it provides to West Virginia's Medicaid program, thereby implicating the State agencies.  The State agencies have a "real," "palpable," and "immediately apparent" interest in this case. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F. 3d 255, 259–260 (4th Cir. 2013) (internal citations and quotations omitted).

At a minimum, WVMI has articulated a "possibility of a right to relief." *Marshall*, 6 F. 3d at 233.  Because WVMI's claims against the State agencies have more than a "glimmer of hope," *Hartley*, 187 F. 3d at 426, this case should be remanded to the Circuit Court of Kanawha County.

### C. *Hobbs's and Taylor's torts arise from the same set of operative facts as APS's and KEPRO's torts.*

Likewise, diversity jurisdiction is also defeated by the claims against Hobbs and Taylor. In an effort to delay a ruling on WVMI's Motion for Preliminary Injunction, APS and KEPRO concocted a frivolous "fraudulent misjoinder" argument, contending that the claims against Hobbs and Taylor "do not arise out of the same transaction or occurrence."  Removal at ¶ 18.  This argument exceeds the bounds of good faith.

7

To determine whether a claim arises out of the "same transaction or occurrence," the Court applies the liberal "same transaction or occurrence" analysis outlined in Rule 20 permissive joinder cases. *See Ashworth v. Albers Medical, Inc.*, 395 F. Supp. 2d 395, 411 (S.D. W. Va. 2005). As this Court has instructed, "this test is similar to the logical relationship test . . . in which all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.*; *see also Moore v. N.Y. Cotton Exchange*, 270 U.S. 593, 610 (1926) ("Transaction is a word of flexible meaning. It may comprehend many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.").

Here, there is far more than a logical relationship. Hobbs and Taylor were formerly WVMI employees who performed services related to the contracts in question. They were solicited by APS and KEPRO as part of a concerted effort to undermine WVMI's ability to perform its services and to stifle competition. *See* Compl. at ¶ 67. Before resigning from WVMI, Hobbs and Taylor forwarded over one thousand (1,000) WVMI emails to their personal accounts and downloaded over one hundred (100) WVMI documents to personal USB drives. These emails and files contain significant amounts of WVMI's confidential, proprietary, and trade secret information, including training materials and internal processes that would allow a competitor — like APS and KEPRO — to entirely replicate WVMI's business and gain a competitive advantage in the upcoming re-bid. *See id.* at ¶¶ 69–71; *see also* Motion for Preliminary Injunction at p. 9.

Thus, the contention that WVMI added Hobbs and Taylor simply to destroy diversity is laughable. Hobbs and Taylor were added *because they harmed WVMI.* WVMI only learned of their actions after the First Civil Action was filed and sought to assert claims against Hobbs and Taylor as quickly as possible.

8

To suggest that these claims do not "arise form the same transaction or occurrence" as the other claims asserted in the Complaint is ludicrous. Hobbs and Taylor *are two of the poached employees* (Count V against APS and KEPRO) and their recruitment and tortious conduct *supports APS's and KEPRO's anti-competitive maneuvers* (Count I against APS and KEPRO). More specious, however, is the complete disregard for the fact that the trade secrets, computer crimes, and conversion counts are also pled against APS and KEPRO. WVMI made this clear at several points in its Complaint:

> 72. Upon information and belief, these emails and documents were or are still in Hobbs's and Taylor's possession ***and/or the possession of KEPRO and APS***.
>
> 73. Upon information and belief, Hobbs and Taylor possessed and/or continue to possess these emails and documents ***while employed by KEPRO and/or APS***.
>
> . . . .
>
> 129. Hobbs and Taylor possessed this computer data ***while employees and/or agents of KEPRO and/or APS***.
>
> . . . .
>
> 134. By engaging in the conduct alleged herein, Hobbs and Taylor, individually and ***as employees and/or agents of KEPRO and/or APS***, have misappropriated WVMI's trade secret information and data from which WVMI derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts by WVMI reasonable under the circumstances to maintain their secrecy.
>
> . . . .
>
> 136. Upon information and belief, Hobbs and Taylor possessed WVMI's confidential, proprietary, and trade secret information ***while employees and/or agents of KEPRO and/or APS***, all without WVMI's express or implied consent.

Compl. (emphases added). The suggestion that these claims do not arise from the same transaction or occurrence is frivolous on its face.

### III. This removal is brought in bad faith, and WVMI should be awarded its costs and fees.

Simply put, there are no colorable grounds for diversity jurisdiction. By cherry-picking facts from this dispute's tortured procedural history, APS and KEPRO attempt to paint WVMI as

9

"desperate" to find a nondiverse defendant (entirely ignoring the fact that DOA and DHHR have been proper parties to this litigation and have been included since the First Civil Action). Removal at ¶ 12. However, the only thing that WVMI is desperate for is a hearing on its Motion for Preliminary Injunction to prevent the irreparable harm that APS and KEPRO are currently inflicting.

28 U.S.C. § 1447(c) provides that when remanding a case back to state court, a District Court can award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." WVMI respectfully requests such an award in this case. It is clear that DOA and DHHR are not nominal parties, but are in fact indispensable parties to this action. Moreover, it is undeniable that the claims of Hobbs and Taylor arise from the same transactions and occurrences that give rise to this entire litigation between all of the parties. These assertions are bolstered, of course, by the "high bar" that APS and KEPRO failed to clear with respect to their fraudulent joinder arguments. Having established more than a "glimmer of hope," the removal is frivolous and an exercise in blatant gamesmanship. In the face of WVMI's need for immediate injunctive relief, APS and KEPRO have twice attempted to maximize the amount of time they have to continue this harm, all without any colorable legal arguments.

As this Court has previously observed when sanctioning attorneys for similar conduct pursuant to both § 1447 and Rule 11,

> I do not believe that defense counsel's actions were motivated by ignorance of the law. These are competent attorneys who knew or should have known when the notice of removal was filed that their arguments were objectively unreasonable and had no chance of success. Defense counsel's motives here seem to be calculated to keep these cases out of state court for as long as possible and to waste the court's time and the plaintiff's resources. The purpose of Rule 11 sanctions is "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses."

*Wilson v. Ethicon Women's Health and Urology*, No. 2:14-cv-13542, 2014 WL 1900852, *5 (S.D. W. Va. May 13, 2014) (internal citations omitted). Such reasoning should control here.

### IV.     Request for expedited consideration and injunctive relief.

Because of APS's and KEPRO's bad faith maneuvers, WVMI has suffered irreparable harm and will continue to do so if injunctive relief is not granted as soon as possible. Accordingly, WVMI requests that this Motion be given expedited consideration so that the case can be remanded back to the Circuit Court of Kanawha County, which can *finally* hear WVMI's Motion for Preliminary Injunction.

Alternatively, because the hearing on WVMI's Motion has twice been canceled due to APS's and KEPRO's bad-faith conduct, WVMI requests that a limited injunction (identical to the temporary restraining order portion of WVMI's Motion) that would preserve the status quo and prevent further irreparable harm until such time as WVMI can *finally* have a hearing on its Motion for Preliminary Injunction.

As stated, the prospective and purported contractual termination of WVMI's status as subcontractor forms the factual and legal foundation of nearly all of WVMI's claims. Obviously, this includes the contractual claims, but also the anti-competitive and tortious interference claims surrounding APS's and KEPRO's poaching of WVMI's employees. According to APS's and KEPRO's contentions, WVMI's status as a subcontractor is set to expire on October 1, 2015. Of course, WVMI contests the legal ability of APS, KEPRO, and the State agencies to prematurely terminate its subcontractor status, and the determination of what occurs on October 1 is exactly the issue upon which WVMI seeks declaratory relief.

WVMI has twice sought determination of this issue ahead of October 1, and has twice been baselessly removed to federal court on the eve of the hearing. With this critical day quickly

11

approaching, WVMI needs to have its injunctive relief addressed ahead of this date, lest the entire issue become moot and APS's and KEPRO's torts become a *fait accompli*. As such, this Motion to Remand should receive expedited consideration, and WVMI's temporary restraining order should be granted while the jurisdictional issues regarding removal are resolved and the case can be returned to the Circuit Court of Kanawha County.

## V.  Conclusion

For the foregoing reasons, WVMI respectfully requests this Court remand the case to the Circuit Court of Kanawha County, grant WVMI limited injunctive relief in the interim period, and to award its costs, expenses, and attorneys' fees associated with this removal, pursuant to 28 U.S.C. § 1447(c).

Respectfully submitted,

West Virginia Medical Institute, Inc.,

*By counsel,*

/s/ Carte P. Goodwin
Carte P. Goodwin (W. Va. Bar 8039)
James A. Kirby, III (W. Va. Bar 8564)
Lucas R. White (W. Va. Bar 12501)
GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**WEST VIRGINIA MEDICAL INSTITUTE, INC.,**

    **Plaintiff,**

v.                                        Civil Action No.: 2:15-cv-13449

**INNOVATIVE RESOURCE GROUP, LLC
d/b/a APS HEALTHCARE MIDWEST, a
Wisconsin Limited Liability Company,
KEPRO ACQUISITIONS, INC., a Pennsylvania
Corporation, WEST VIRGINIA
DEPARTMENT OF ADMINISTRATION,
PURCHASING DIVISION, a West Virginia
Agency, WEST VIRGINIA DEPARTMENT OF
HEALTH AND HUMAN RESOURCES,
a West Virginia Agency, ANGELA HOBBS, an
individual, and KRISTYN TAYLOR, an
individual,**

    **Defendants.**

## CERTIFICATE OF SERVICE

    I, Carte P. Goodwin, certify that, on September 29, 2015, a true and exact copy of the foregoing **Motion to Remand and Request for Expedited Consideration** was served via electronic notification through the Court's CM/ECF system:

Webster J. Arceneaux III, Esq.
Lewis Glasser Casey & Rollins PLLC
BB&T Square, Suite 700
300 Summers Street
Charleston, WV 25301
*Counsel for Innovative Resource Group, LLC & KEPRO Acquisitions, Inc.*

Kelli D. Talbott, Esq.
Greg S. Foster, Esq.
Office of the Attorney General
812 Quarrier Street, 2nd Floor
Charleston, WV 25301
*Counsel for West Virginia Department of Administration, Purchasing Division*

Chris Dodrill
Deputy Attorney General
Office of the Attorney General of West Virginia
812 Quarrier Street, 2nd Floor
Charleston, WV 25301
*Counsel for West Virginia Department of Health and Human Resources*

Michael J. Del Giudice
Timothy J. LaFon
Ciccarello, Del Giudice & LaFon
1219 Virginia Street, East - Suite 100
Charleston, WV 25301
*Counsel for Angela Hobbs and Kristen Taylor*

/s/ Carte P. Goodwin
Carte P. Goodwin (W. Va. Bar 8039)