IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**WEST VIRGINIA MEDICAL INSTITUTE, INC.,**

      **Plaintiff,**

v.                                                Civil Action No.: 2:15-cv-13449

**INNOVATIVE RESOURCE GROUP, LLC
d/b/a APS HEALTHCARE MIDWEST, a
Wisconsin Limited Liability Company,
KEPRO ACQUISITIONS, INC., a Pennsylvania
Corporation, WEST VIRGINIA
DEPARTMENT OF ADMINISTRATION,
PURCHASING DIVISION, a West Virginia
Agency, WEST VIRGINIA DEPARTMENT OF
HEALTH AND HUMAN RESOURCES,
a West Virginia Agency, ANGELA HOBBS, an
individual, and KRISTYN TAYLOR, an
individual,**

      **Defendants.**

**RESPONSE IN OPPOSITION TO INNOVATIVE RESOURCE GROUP, LLC AND
KEPRO ACQUISITION, INC.'S MOTION TO DISMISS COUNTS I, III, IV, AND V**

COMES NOW Plaintiff West Virginia Medical Institute, Inc. ("WVMI") and files its response in opposition to the Motion to Dismiss filed on behalf of Defendants Innovative Resource Group, LLC d/b/a APS Healthcare Midwest ("APS") and KEPRO Acquisitions, Inc. ("KEPRO").

    *I.*    *Standard of Review*

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court should "accept as true all of the factual allegations contained in the complaint. The court is additionally required to draw all reasonable inferences from those facts in the plaintiff's favor." *Corbett v. Duerring*, 780 F. Supp. 2d 486, 491 (S.D. W. Va. 2011) (internal

1

quotations, citations, and editing marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94; *S. Carolina Dep't of Health and Envtl.. Control v. Comm. & Indus. Ins. Co.*, 372 F. 3d 245, 255 (4th Cir. 2004); *Edwards v. City of Goldsboro*, 178 F. 3d 231, 244 (4th Cir. 1999). "When considering a motion to dismiss, a court accepts as true all well-plead allegations and views the complaint in the light most favorable to the plaintiff. A court may consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Ohio Valley Envtl. Coal., Inc. v. Hobet Mining, LLC*, 723 F. Supp. 2d 886, 904 (S.D. W. Va. 2010) (internal quotations, citations, and editing marks omitted).

## II. Argument

### A. Count I should not be dismissed because there is a private right of action for corrupt and anti-competitive conduct in violation of W. Va. Code § 5A-3-31.

West Virginia Code § 5A-3-31 prohibits any "corrupt . . . action, combination, collusion or conspiracy" in connection with the bidding of a public contract with the intent to:

> (1) Lessen competition among prospective vendors; or
> (2) cause the state to pay a higher price for such services, commodities or printing than would be or would have been paid in the absence of such action, combination, collusion or conspiracy; or
> (3) cause one prospective vendor or vendors to be preferred over one or more other prospective vendor or vendors.

W. Va. Code § 5A-3-31(a). APS and KEPRO contend that there is no private cause of action for violations of this statute.

To determine whether a statute provides a private cause of action for violations that harm individuals, the Supreme Court of Appeals has established the following four-factor test:

> (1) the plaintiff must be a member of the class for whose benefit the statute was enacted;
> (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended;
> (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and

2

>(4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

*Hurley v. Allied Chem. Corp.*, Syl. Pt. 1, 262 S.E. 2d 757 (W. Va. 1980).

Here, the alleged violations of W. Va. Code § 5A-3-31 satisfy every one of these elements. First, WVMI is a member of the class of prospective vendors for whose benefit the statute was enacted. In fact, the statute specifically references this "class" of people and entities: "Lessen competition among *prospective vendors*" and "cause one prospective vendor or vendors to be preferred over one or more *other prospective vendor or vendors*." W. Va. Code § 5A-3-31(a)(1) & (3) (emphasis added). Although the Defendants are correct that the State is ***an*** intended beneficiary of the statute, it is not the ***only*** one. *See, e.g.*, W. Va. Code § 5A-3-1 (listing the competitive and "free enterprise" purposes of the Purchasing Division). Defendants' argument ignores the statutory references to other "prospective vendors" and the necessary role that such vendors play in providing the competition that the statute is designed to protect. Finally, the statute also specifically contemplates — and prohibits — one vendor from being favored *over another vendor*. It would be illogical for the statute to protect vendors from such unfair preferences, but not allow them a remedy for such unlawful conduct.

Defendants' reliance on *State v. Duncan*, 513 S.E. 2d 459 (W. Va. 1998), is misplaced. First, *Duncan* **is about a different statute,** § 5A-3-30, not -31. Moreover, *Duncan* did not involve the question of whether a statute authorizes a private cause of action (or even consider the *Hurley* factors). Rather, the Court was asked to determine who could be listed as a proper victim in a *criminal indictment*. Finally, the Supreme Court of Appeals' finding that "the State is the only intended victim under W. Va. Code § 5A-3-30," was necessarily based upon the statutory language that prohibited "obtain[ing] any services, money, goods or other property *from the state* under any contract made under the provisions of this article, by false pretense, token or representation, or by

3

delivery of inferior commodities, with intent to defraud." W. Va. Code § 5A-3-30(b) (emphasis added). By contrast, the statute at issue here, 5A-3-31, explicitly refers to both the State *and other prospective vendors* and expresses its intent to protect competition among those vendors and prohibit unfair preferences for one over another.

As for the second element, the legislative intent favors a private cause of action. West Virginia Code § 5A-3-1, *et seq.*, establishes the Purchasing Division and the rules that govern the bidding of public contracts. It specifically lists the purposes of the Division and the rules, including "fair and equitable treatment of all persons who deal with the procurement system," "broad-based competition within the free enterprise system," and "safeguards for the maintenance of a procurement system of quality and integrity." W. Va. Code § 5A-3-1(6), (8), & (9). This explicit legislative intent supports the availability of a private cause of action against a competing bidder who has sought to stifle all competition, especially through such egregious means here.

Similarly, allowing a private cause of action for violations of § 5A-3-31 would be "consistent with the underlying purposes of the legislative scheme." Syl. Pt. 1, *Hurley*, 262 S.E. 2d at 757. Causes of action by "other prospective vendors" who have been harmed by anti-competitive conduct allows for an effective enforcement mechanism to prevent such conduct. *See, e.g.*, *Hurley*, 262 S.E. 2d at 76 ("[W]hen [a] remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute." (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 703 (1979)). While the prohibitions on anti-competitive conduct are criminal in nature, such proceedings by the prosecuting attorney would do nothing to remedy the harms done to the "other prospective vendors" who are harmed by violations of § 5A-3-31. Finally, as for the fourth element, a private cause of action here would not intrude into an area of exclusively federal concern.

4

Accordingly, all four *Hurley* factors are met here, and a private cause of action for anti-competitive conduct exists. As such, the Defendant's Motion to Dismiss should be denied on this point and Count I should survive.

### B. Count III should not be dismissed because WVMI has pleaded a breach of contract claim against WVMI.

APS argues that WVMI's claim for breach of the implied duty of good faith and fair dealing cannot exist without a breach of the contract itself. That is a correct statement of law. *See, e.g.*, *Clendenin v. Wells Fargo Bank, N.A.*, 2:09-cv-00557, 2009 WL 4263506 at *5 (S.D. W. Va. Nov. 24, 2009) ("Because West Virginia does not permit a stand-alone claim for a breach of the covenant of good faith and fair dealing, this claim will live or die by the breach-of-contract claim in Count III."). What APS fails to mention, however, is the fact that *WVMI has pleaded a claim for breach of contract.* APS has not sought dismissal of this claim. This Court has held many times that a claim for breach of the implied duty of good faith and fair dealing survives a motion to dismiss when the accompanying breach of contract claim also survives. *See, e.g.*, *id.*; *Hanshaw v. Wells Fargo Bank, N.A.*, 2:14-cv-28042, 2015 WL 5345439 at *17 (S.D. W. Va. Sept. 11, 2015); *Nowlan v. JP Morgan Chase Bank, N.A.*, 2:11-cv-00404, 2012 WL 1029315 at *4 (S.D. W. Va. Mar. 26, 2012); *Koontz v. Wells Fargo Bank, N.A.*, 2:10-cv-00864, 2011 WL 1297519 at *8 (S.D. W. Va. Mar. 31, 2011). Therefore, because WVMI has pleaded a valid breach of contract claim, WVMI's claim for breach of the implied duty of good faith and fair dealing is also validly pleaded. As such, the Defendant's Motion to Dismiss should be denied on this point and Count III should survive.

### C. Count IV should not be dismissed because APS and KEPRO are separate entities.

A necessary element of a tortious interference claim is that the defendant must be "a party outside" the contractual or business expectancy at issue. Syl. Pt. 2, *Torbett v. Wheeling Dollar*

5

*Sav. & Trust Co.*, 314 S.E. 2d 166 (W. Va. 1983). KEPRO argues that it cannot be held liable for interfering with APS's contract because KEPRO owns the company that ultimately owns APS.[1] Admittedly, the Defendants are correct in stating that "a party to a contract cannot tortiously interfere with its own contract." Mot. Dismiss at 9. However, *KEPRO is not a party to the contract.* To get around this fatal fact, KEPRO argues "WVMI acknowledges that APS Healthcare Midwest was acquired by KEPRO and that APS Healthcare Midwest is now a wholly owned subsidiary of KEPRO. As such, WVMI has also acknowledged that APS Healthcare Midwest and KEPRO are now one legal entity . . . ." Mot. Dismiss at 8–9 (internal citations omitted). That is simply wrong. KEPRO and APS are not "one legal entity."

KEPRO purchased the corporation that ultimately owns APS. It did not *merge* with APS. The two are still separate and distinct entities. One is a Pennsylvania corporation (KEPRO) and the other is a Wisconsin limited liability company (APS). Thus, Defendants' contention that the two are "now one legal entity" is demonstrably wrong. Rather, "[t]he law presumes . . . that corporations are separate from their shareholders." Syl. Pt. 1, *Laya v. Erin Homes, Inc.*, 352 S.E. 2d 93 (W. Va. 1986) (internal citations omitted). The Supreme Court of Appeals instructs that "the corporate form will never be disregarded lightly. The mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure." *S. States Co-op., Inc. v. Dailey*, 280 S.E. 2d 821, 827 (W. Va. 1981) (internal citations omitted). It can be set aside only to "prevent the corporate form from being used to perpetrate injustice, defeat public convenience or justify wrong." *Id.* What KEPRO is *actually* trying to do — but is not stating plainly to the Court — is to pierce its own corporate veil for a purely self-serving, tactical purpose (in a Motion to Dismiss, no less). Even

---

[1] The Defendants state that KEPRO Acquisitions, Inc. owns APS Healthcare Bethesda, Inc. which, in turn, owns APS. *See, e.g.*, Not. Removal & Aff. J. Dougher (attached thereto).

while taking all of the facts in the light most favorable to WVMI, KEPRO nonetheless asks this Court to push aside the corporate form, not to "prevent . . . an injustice," but *as a defense to an injustice*. It is clear that officers of KEPRO were actively involved in the anti-competitive actions and in directing APS to breach the contract with WVMI. Because KEPRO was not a party to that contract, it can be held liable for tortious interference with it.[2] As such, the Defendant's Motion to Dismiss should be denied on this point and Count IV should survive.

> D. **Count V should not be dismissed because the Supreme Court of Appeals of West Virginia has expressly stated that such bad-faith recruitment of even at-will employees constitutes a tort.**

KEPRO and APS argue that they cannot be held liable for their tortious interference with WVMI's employment contracts because WVMI's employees were at-will. However, when a defendant solicits another's employees maliciously — even at-will employees — it still constitutes tortious interference, nonetheless. The Supreme Court of Appeals of West Virginia has plainly stated as such. In *Thacker Coal & Coke Co. v. Burke*, the Court considered a case in which a coal company maliciously solicited and poached a competitor's employees in such a way to take away its workforce and to force that competitor to breach a contract with its customer. The Court specifically held that:

> [1] One who maliciously entices a servant in actual service of a master to desert and quit his service is liable to action therefor.
> [2] If one wantonly and maliciously, whether for his own benefit or not, induces a person to violate his contract with a third person, to the injury of that third person, it is actionable.
> [3] Persons who conspire to induce others to break a valid contract between other persons are liable to action therefor.

---

[2] It should be noted that at least some other jurisdictions cast doubt upon a parent company's ability to tortiously interfere with its subsidiary's contracts. *See, e.g.*, *T.P. Leasing Corp. v. Baker Leasing Corp.*, 732 S.W. 2d 480, 483 (Ark. 1987) ("We think the correct rule is that a parent corporation's privilege permits it to interfere with another's contractual relations when the contract threatens a present economic interest of its wholly owned subsidiary, absent clear evidence that the parent employed wrongful means or acted with an improper purpose."). Although the West Virginia Supreme Court of Appeals has never ruled on this precise question, the wrongfulness and improper purpose of KEPRO's conduct support a *claim* for *tortious* interference that, at a minimum, satisfies the standard under Rule 12(b)(6).

7

Syl. Pts. 1–3, *Thacker Coal & Coke Co. v. Burke*, 53 S.E. 161 (W. Va. 1906); *see also Parker Paint & Wall Paper Co. v. Local Union No. 813*, 105 S.E. 911, 914 (W. Va. 1921) ("If one person wantonly or maliciously, whether for his own benefit or not, induces a person to violate his contract with a third person to the injury of that third person, an action will lie." (citing *Thacker Coal*)).

Like WVMI's poached employees, the poached employees in *Thacker Coal* were also at-will. The Court considered this fact and specifically held that it was irrelevant:

> This count says the miners were "employed" by the plaintiff and in actual service. Now, if the law gives action for enticement of a servant, it is not conceivable that a third person can maliciously entice away a lot of employés simply because there was no contract fixing term of service. The relation of master and servant exists. In such case there is a contract recognized by law, an implied contract by which the employé can recover for his service. By entering such service the employé agrees, contracts, to work. *It is no difference that he can quit when he pleases*.

*Id.* at 163 (emphasis added). As the Court has further explained in a more recent case,

> The existence of an at-will employment relationship does not insulate a defendant from liability for tortious interferences. *See Toney v. Casey's General Stores, Inc.,* 460 N.W. 2d 849, 853 (Iowa 1990); *Europlast, Ltd. v. Oak Switch Systems, Inc.,* 10 F. 3d 1266, 1274 (7th Cir. 1993). The tort of interference with a business relationship does not require that the relationship be evidenced by an enforceable contract. *See Tamiami Trail Tours, Inc. v. Cotton,* 463 So. 2d 1126 (Fla. 1985); *Northern Plumbing & Heating, Inc. v. Henderson Bros., Inc.,* 83 Mich. App. 84, 93, 268 N.W. 2d 296 (1978). Until an employee is actually terminated, the at-will employment remains valid and subsisting, and third persons may not improperly interfere with it. *See* Restatement (Second) of Torts § 766 cmt. g. (1979).

*Tiernan v. Charleston Area Med. Ctr., Inc.*, 506 S.E. 2d 578, 591 n.20 (W. Va. 1998). Indeed, the Restatement (Second) of Torts states as much: "[W]ith a contract that, by its terms or otherwise, permits the third person to terminate the agreement at will[, u]ntil he has so terminated it, the contract is valid and subsisting, and the defendant may not improperly interfere with it." § 766 cmt. g (1965) (cited in *Tiernan*, 506 S.E. 2d at 591 n.20).

The fact that the poached employees were at-will is legally irrelevant and does not excuse the fact that APS and KEPRO still tortiously interfered with WVMI's employment relationships with the intent to harm WVMI. As such, the Defendant's Motion to Dismiss should be denied on this point and Count V should survive.

### III. Conclusion

For the forgoing reasons, WVMI respectfully requests that this Court reject APS's and KEPRO's contentions and deny their Motion to Dismiss.

Respectfully submitted,

West Virginia Medical Institute, Inc.,

*By counsel,*

/s/ Carte P. Goodwin
Carte P. Goodwin (W. Va. Bar 8039)
James A. Kirby, III (W. Va. Bar 8564)
Lucas R. White (W. Va. Bar 12501)
GOODWIN & GOODWIN, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**WEST VIRGINIA MEDICAL INSTITUTE, INC.,**

    **Plaintiff,**

v.                                                 Civil Action No.: 2:15-cv-13449

**INNOVATIVE RESOURCE GROUP, LLC**
**d/b/a APS HEALTHCARE MIDWEST, a**
**Wisconsin Limited Liability Company,**
**KEPRO ACQUISITIONS, INC., a Pennsylvania**
**Corporation, WEST VIRGINIA**
**DEPARTMENT OF ADMINISTRATION,**
**PURCHASING DIVISION, a West Virginia**
**Agency, WEST VIRGINIA DEPARTMENT OF**
**HEALTH AND HUMAN RESOURCES,**
**a West Virginia Agency, ANGELA HOBBS, an**
**individual, and KRISTYN TAYLOR, an**
**individual,**

    **Defendants.**

## CERTIFICATE OF SERVICE

    I, Carte P. Goodwin, certify that, on October 9, 2015, a true and exact copy of the foregoing **Response in Opposition to Innovative Resource Group, LLC and KEPRO Acquisition, Inc.'s Motion to Dismiss Counts I, III, IV, and V** was served via electronic notification through the Court's CM/ECF system:

Webster J. Arceneaux III, Esq.
Lewis Glasser Casey & Rollins PLLC
BB&T Square, Suite 700
300 Summers Street
Charleston, WV 25301
*Counsel for Innovative Resource Group, LLC & KEPRO Acquisitions, Inc.*

Kelli D. Talbott, Esq.
Greg S. Foster, Esq.
Office of the Attorney General
812 Quarrier Street, 2nd Floor
Charleston, WV 25301
*Counsel for West Virginia Department of Administration, Purchasing Division*

Chris Dodrill
Deputy Attorney General
Office of the Attorney General of West Virginia
812 Quarrier Street, 2nd Floor
Charleston, WV 25301
*Counsel for West Virginia Department of Health and Human Resources*


Michael J. Del Giudice
Timothy J. LaFon
Ciccarello, Del Giudice & LaFon
1219 Virginia Street, East - Suite 100
Charleston, WV 25301
*Counsel for Angela Hobbs and Kristen Taylor*


/s/ Carte P. Goodwin
Carte P. Goodwin (W. Va. Bar 8039)